(42 South. 251.)

No. 16,132.

ROVENS v. McROBINSON.

In re ROVENS' HEIRS.

(June 26, 1906. Rehearing Denied Nov. 12, 1906.)

1. TAXATION—SALE FOR TAXES—TAX DEED—RECOVERY BY OWNER.
Property that has passed to the state for taxes, that was sold thereafter by the state over 30 years ago, that was assessed in the name of the buyer at tax sale for a number of years, and a second time sold for taxes in the name of the record owner as tax debtor, and that has since passed by mesne conveyance to defendant, cannot be recovered by the original owner, who was not in possession at the date the suit was brought.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 1593–1597.]

2. SAME—KNOWLEDGE OF OWNER.
The original owner knew that the property had been sold for taxes. He paid some of the taxes thereon assessed in the name of the record owner.

3. SAME—PAYMENT OF TAXES.
The rolls offered in evidence show that the taxes had been paid. They were not paid by the original owner, as he contends.

4. SAME.
The marginal notes show that payment of the taxes was made by applying part of the proceeds of the tax sale to satisfaction of prior taxes.

(Syllabus by the Court.)

Action by the heirs of Eugene Rovens against Murray McRobinson. Judgment for defendant was affirmed by the court of appeals, and plaintiffs apply for writs of certiorari or review. Rule nisi discharged.

Rufus Edward Foster and Francis Rivers Richardson, for applicants. William Winans Wall, for respondent.

BREAUX, C. J. Plaintiffs, widow and the heirs of the late Eugene Rovens, claim title to a lot of ground situated in the city of New Orleans.

The husband of the former and father of the latter bought it from Francois Lacroix in 1886.

The action is petitory.

There is no question but that the property was originally owned by Rovens, and that if he did not lose it by inattention to tax claims it is still his. Unfortunately for his widow and his heirs, there was negligence, the tax bills were not met, and the property was sold for taxes.

We will here state that Rovens died in 1892, and that his widow had lost possession of the property about 18 months before this suit was brought.

The defendant denies the ownership claimed by plaintiffs, and sets up that he bought the lot from the Aztec Land Company in 1903, and the Aztec Land Company had bought it from W. H. Howcott.

By different conveyances defendant traces back his title to a forfeiture to the state for the delinquent taxes of the years 1875 and 1876.

About 10 years after this forfeiture to the state, the property was sold by Desposito, deputy of Houston, tax collector, to Orlof Lake. This sale by Desposito, deputy, to Lake was made under Act No. 82 of 1884.

The property was then assessed in the name of Orlof Lake. The taxes on the property for the year 1891 were not paid. It was seized and offered for sale for taxes, and adjudicated to A. L. Lehman. It appears that Lehman neglected to pay his taxes, and in consequence, in the year 1898, the city adjudicated the property to Howcott, sold, as before mentioned, under the assessment made in the name of Lehman, and from Howcott it passed, as before mentioned, until it found its way in defendant's name.

Whatever taxes were paid during the time that Lake was the owner must have been paid in the name of Lake.

It does not appear that the property was assessed in any other name. Lake was the record owner.

It does not appear with any certainty that the taxes for the years 1875 and 1876 were ever paid. The certificate showing amount of taxes due to the state for the year 1875 has on it, in the margin, the abbreviation "Pd." It does not appear that the taxes were paid by the original tax debtor, Rovens.

At the end of the line are written the words "A. S., 82 and 84," which has the appearance of reference to the word "paid" made after the sale of that year. "Pd." and the other marginal note are in red ink, and not in the black ink of the original.

We have carefully read the testimony of witnesses touching payment by plaintiff or plaintiff's author, and we have not found that any payments had been made, as plaintiffs urge.

Plaintiffs testified that their tax receipts had been destroyed by fire. They did lose tax receipts in a fire, but the testimony as to the particular receipts lost or destroyed is not satisfactory. The judge of the district court was not impressed by the testimony, and concluded that no payment had been made. This was the determination of the court of appeals.

The conclusion is irresistible that the property passed out of the ownership of plaintiffs' ancestor, and that latterly it passed out of their possession. It follows that there was an outstanding title.

The title having been originally devested, as before mentioned, and gone into other hands, the plaintiffs have no interest to question the title under which the defendant owns.

Plaintiffs interposed the plea of 10 years' prescription, acquirendi causa. About 18 months before the suit was brought they were not even in possession of the property.

Be it as it may regarding possession, one of the essentials to sustain the prescription of 10 years, acquirendi causa, is "a title which shall be legal and sufficient to transfer the property." Civ. Code, art. 3479.

By reason of the fact that they had no title at all, as before explained, it having passed into other hands, plaintiffs are absolutely without ground upon which to maintain the plea in question.

Plaintiffs can gather no comfort from the utterances of the decision in Boagni v. Pacific Improvement Co., 111 La. 1063, 36 South. 129, for the defendant in the cited case had acquired title after the tax sale, upon which it based its plea of prescription. The title was one acquired in good faith, and of which prescription could well be predicated, whilst in our case plaintiffs have, as

we have seen, no title at all. The one they had they lost years ago.

They have lost by neglect. It abundantly appears that the original tax debtor, Rovens, knew that the property had been assessed in the name of Lake, the purchaser, at tax sale in 1894. He none the less remained quiescent, and did not seek to have the record changed or amended; he even went to the extent of paying taxes on the property assessed in the name of Lake. The assessor could not well do otherwise than to assess it in the name of the record owner. It was, to say the least, a prima facie title, which the assessor, acting in good faith, can take as sufficient for an assessment. Augusti v. Citizens' Bank, 46 La. Ann. 529, 15 South. 74.

But plaintiffs urge that their ancestor in title had never been notified that taxes were due thereon by him, and that it was the intention to sell the property.

With reference to this ground, we deem it sufficient to state that the assessment having been made in the name of Lake, who had at the time become the tax debtor, as the property had changed hands, as before mentioned, the tax collector was not under legal obligation to notify the former owner, Rovens, whose title had been superseded by that of Lake, and who did not appear of record as actual owner. Howcott v. City of New Orleans, 107 La. 305, 31 South. 668.

It follows that the assessment made in the name of the different owners after the title which plaintiffs now claim had been devested was legal. The proper notice was given.

We will only refer to the Lehman sale, made in 1902, to state that, as Lehman was record owner of the property, it was proper to serve notice upon him, and not upon plaintiffs, whose title had been devested since the purchase by Lake, if not since the adjudication to the state in 1886.

It is therefore ordered, adjudged, and decreed that the rule nisi be recalled and discharged, that applicant's demand be rejected, and the application dismissed.